**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MABLE D. IVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV1304 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Mable Darlene Ivey, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.)  Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 13; see also Docket Entry 12 (Plaintiff's Memorandum), Docket Entry 14 (Defendant's Memorandum)).  For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of April 10, 2010. (Tr. 177-80, 305-17.) Upon denial of those applications initially (Tr. 124-38, 181-92) and on reconsideration (Tr. 139-56, 199-206), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 207-08). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 89-123), at which Plaintiff amended her onset date to August 1, 2011 (Tr. 99). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 157-67.) The Appeals Council thereafter granted Plaintiff's request for review (Tr. 173-76, 437-39), vacated the ALJ's decision, and remanded the matter for further administrative proceedings, to include evaluation of Plaintiff's mental disorders, obesity, and new evidence Plaintiff submitted with the request for review (Tr. 173-76).

Following remand, a new ALJ convened a second hearing, which Plaintiff, her attorney, and a VE attended. (Tr. 54-88.) At the outset of that hearing, the ALJ granted Plaintiff's renewed motion to amend her onset date to August 1, 2011. (Tr. 58.) The ALJ thereafter issued a decision finding Plaintiff not disabled. (Tr. 32-46.) The Appeals Council subsequently denied Plaintiff's request for review (Tr. 1-7, 30-31, 447-49), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2015.

2.   [Plaintiff] has not engaged in substantial gainful activity since April 10, 2010, the alleged onset date.

3.   [Plaintiff] has the following severe impairments: degenerative joint disease, right hip avascular necrosis, obesity, diabetes mellitus, hypertension, right ventricular hypertrophy, incontinence, posttraumatic stress disorder, depression, and anxiety.

. . .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [Plaintiff] has the residual functional capacity to perform light work (lifting and carrying 20 pounds occasionally and 10 pounds frequently . . . ), except that she should have a sit/stand option allowing her to sit for 30 minutes and stand as needed up to 10 minutes.  She can occasionally push and pull using her right lower extremity.  She can occasionally climb, balance, stoop, kneel, and crawl.  She uses a cane for balance.  She should avoid concentrated exposure to fumes.  [Plaintiff] is capable of simple routine repetitive tasks in a stable environment with occasional interpersonal interaction.

. . .

6.   [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are

jobs that exist in significant numbers in the national
economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the [] Act, from April 10, 2010, through the
date of this decision.

(Tr. 37-45 (bold font and internal parenthetical citations
omitted).)[2]

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits."  Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not established entitlement to relief under the
extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ if they are
supported by substantial evidence and were reached through
application of the correct legal standard."  Hines, 453 F.3d at 561

---

[2] The ALJ's references to "April 10, 2010" as the alleged onset date (Tr. 37, 45)
constitute typographical errors, as Plaintiff amended her onset date to August
1, 2011 (see Tr. 58, 99); however, those errors remain harmless because a
decision that Plaintiff did not qualify as disabled from April 10, 2010, to
February 25, 2015 (the date of the second ALJ's decision), necessarily entails
a determination that she did not meet the disability requirements from August 1,
2011, to February 25, 2015.

(internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[3]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  <u>Id.</u>  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' <i>i.e.</i>, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent

---

[3]  The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')."  Id. at 179.[5]  Step four then requires the ALJ to assess

---

[4]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

[5]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., (continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ "erred in finding that [Plaintiff] has the [RFC] to perform a reduced range of light work" (Docket Entry 12 at 8 (capitalization omitted);

---

[5] (...continued)
pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

2) the ALJ "erred in failing to accord appropriate weight to the opinion evidence in the record" (id. at 12 (capitalization omitted)); and

3) the ALJ "erred in failing to find that [Plaintiff's] [chronic obstructive pulmonary disease ("COPD")] is a severe impairment and further failing to discuss this impairment in the step 2 discussion of severe impairments" (id. at 15 (capitalization omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 3-18.)

## 1. RFC

In Plaintiff's first issue on review, she faults the ALJ for committing four separate errors in formulating the RFC. (Docket Entry 12 at 8-12.) First, Plaintiff maintains that, because the ALJ included "a sit/stand option allowing [Plaintiff] to sit for 30 minutes and stand as needed for up to 10 minutes," the "RFC clearly does not meet the standards of light work . . . [which requires] standing/walking for 6 hours in a day," and that, "[a]t best, the RFC . . . is essentially sedentary." (Id. at 9 (citing Tr. 39 and Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, 1983 WL 31251 (1983)).) Second, Plaintiff contends that her "credible testimony serves to illustrate that she is unable to work due to chronic severe pain." (Id. (citing Tr. 59-

81).) Third, Plaintiff asserts that the ALJ failed to account for Plaintiff's moderate limitation in concentration, persistence, or pace ("CPP") in the RFC, because the ALJ did not address Plaintiff's ability to stay on task in violation of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Docket Entry 12 at 10-11.) Fourth, Plaintiff argues that VE Louise Walker's testimony "substantiates that [Plaintiff] is unable to work," because Walker testified that "an individual [with Plaintiff's RFC] would be precluded from all substantial gainful employment if excessive breaks or absences were caused by her impairments consistent with [Plaintiff's] testimony." (Id. at 12 (citing Tr. 121-22).) Plaintiff's arguments in this regard do not provide a basis for relief.

Plaintiff's contention that the ALJ's inclusion of a sit/stand option renders the RFC "essentially sedentary" and thus invalidates the ALJ's step five adoption of the three light exertion jobs cited by the VE (id. at 9) misses the mark. Social Security Ruling 83-12, Titles II and XVI: Capability to Do Other Work – the Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work, 1983 WL 31253 (1983) ("SSR 83-12") explains an ALJ's obligations when a claimant's RFC falls between two exertional levels as follows:

> Where an individual's exertional RFC does not coincide
> with the definition of any one of the ranges of work
> . . ., the occupational base is affected and may or may
> not represent a significant number of jobs . . . . The

10

[ALJ] will consider the extent of any erosion of the occupational base and a[ss]ess its significance.  . . .

Where the extent of erosion of the occupational base is not clear, the [ALJ] will need to consult a vocational resource.
. . .

In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing.  . . . Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work.  . . .

. . .

In cases of unusual limitation of ability to sit or stand, a V[E] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *2-4.

    Here, a review of the hearing transcript demonstrates that the

ALJ complied with the above-quoted requirements of SSR 83-12:

    [ALJ:]      Assume that I find on the basis of the credible record before me for a full relevant period that [Plaintiff's] demonstrated exertional impairments reflect[] a[n] [RFC] for a less than full range of light work on a sustained basis.

                Assume further that she has demonstrated certain significant nonexertional impairments . . . which limit[] [Plaintiff] to work requiring a sit/stand option; sit for 30 minutes, stand as needed up to 10 minutes . . . .

                . . . Taking into full account these nonexertional restrictions, [Plaintiff's] age, education, and prior relevant work experience, are there jobs existing in the general area in

```
                    which [Plaintiff] lives or several regions of
                    the  country  that  she  can  do  with  these
                    limitations?

    [VE:]           You said, Your Honor, no sitting more than 30
                    minutes?  . . .

    [ALJ:]          Right.  Sit for 30 minutes.  She can sit
                    longer than that, . . . I mean she could sit
                    30 minutes, 60 minutes, two hours.  It's
                    really at her discretion.  And then stand as
                    needed up to 10 minutes.

    [VE:]           Yes, Your Honor, there would be jobs.

    [ALJ:]          Very well.  And they would be?

    [VE:]           Assembler, [Dictionary of Occupational Titles
                    ("DOT")] No. 706.684-022, with an exertional
                    level of light, with a[] [Specific Vocational
                    Preparation  ("SVP")]  of  two.    National
                    employment numbers, 235,910.  North Carolina
                    employment  numbers,  3,320.   Inspector,  [DOT]
                    No. 784.687-042, with an exertional level of
                    light,  with  an  SVP  of  two.    National
                    employment  numbers,  660,860.   North  Carolina
                    employment numbers, 27,180.

                    Packer,  [DOT]  No.  920.685-026,  with  an
                    exertional level of light, with an SVP of two.
                    National employment numbers, 354,810.  North
                    Carolina employment numbers, 12,360.
```

(Tr. 83-84 (emphasis added).)

Plaintiff's attorney then cross-examined the VE regarding

whether the cited jobs could accommodate a sit/stand option:

```
    [ATTY:]         The jobs you've just listed, they're all light
                    exertional jobs and they allow for a sit/stand
                    option as described?

    [VE:]           Yes.

    [ATTY:]         Does that change the numbers at all when you
                    include the option to sit or stand?
```

[VE:]     Yes,    and    I've    taken    [that]    in[to]
          consideration.   We could take out 10 to 20
          percent of those jobs.

(Tr. 85.)  The VE's testimony thus constitutes substantial evidence supporting the ALJ's step five finding that other jobs exist in significant numbers in the national economy that Plaintiff could perform (see Tr. 45).  See Buckner v. Colvin, No. 1:10CV375, 2014 WL 3962463, at *5 (M.D.N.C. Aug. 13, 2014) (unpublished) (Peake, M.J.) (finding that "the ALJ properly asked the [VE] to clarify the implications of the sit/stand option o[n] the occupational base of light work, and properly relied upon the [VE's] identification of jobs that [the p]laintiff can perform"), recommendation adopted, slip op. (M.D.N.C. Sept. 30, 2014) (Beaty, Jr., S.J.).

Next, Plaintiff's reliance on her own testimony to challenge the ALJ's RFC determination falls short.  The ALJ evaluated Plaintiff's credibility, but determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [we]re not entirely credible." (Tr. 40.) Plaintiff has not challenged the ALJ's credibility evaluation (see Docket Entry 12) and thus has not established that the ALJ erred in declining to fully credit Plaintiff's statements in formulating the RFC.  See Squires v. Colvin, No. 1:16CV190, 2017 WL 354271, at *5 (M.D.N.C. Jan. 24, 2017) (unpublished) (Auld, M.J.) (noting that an "ALJ labors under no obligation to accept [the p]laintiff's subjective complaints 'at face value'" (quoting Ramos-Rodriguez v.

Commissioner of Soc. Sec., Civ. No. 11-1323 (SEC), 2012 WL 2120027, at *3 (D.P.R. June 11, 2012) (unpublished))), recommendation adopted, slip op. (M.D.N.C. Mar. 6, 2017) (Schroeder, J.); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do.").[7]

In Plaintiff's third RFC sub-argument, she maintains that the ALJ's "RFC analysis failed to fully and accurately account for [Plaintiff's] mental limitations in [CPP]." (Docket Entry 12 at 11.) In that regard, Plaintiff argues that, pursuant to Mascio, an ALJ does not account for a claimant's limitations in CPP "by

---

[7] Effective March 28, 2016, see Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date of original Ruling), the Social Security Administration superseded SSR 96-7p with Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . sub-regulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character," id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p," id. at *1 n.1. The ALJ's decision in this case predates the effective date of SSR 16-3p (see Tr. 46), and, because SSR 16-3p changes existing Social Security Administration policy regarding subjective symptom evaluation, that Ruling does not apply retroactively, see Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *4-8 (M.D.N.C. Jan. 23, 2017) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (unpublished) (Eagles, J.); see also Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 n.6 (M.D.N.C. Apr. 22, 2016) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 10, 2016) (Biggs, J.).

restricting the . . . [RFC] to simple, routine tasks or unskilled work . . . [because] [t]he ability to perform simple tasks differs from the ability to stay on task[,] [and] [o]nly the latter limitation would account for a [claimant's] limitation in [CPP]." (Id. (citing Mascio, 780 F.3d at 638).)  According to Plaintiff, the ALJ "failed to adequately account for [Plaintiff's moderate limitation in CPP] in his formulation of the RFC because he did not address [Plaintiff's] ability to stay on task and work at a sufficient pace to perform substantial gainful employment." (Id. at 11-12 (citing Tr. 38, and referencing Tr. 39).)  This argument does not entitle Plaintiff to relief.

The United States Court of Appeals for the Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638.  However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .  An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

<u>Jones v. Colvin</u>, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation adopted by District Judge) (unpublished) (emphasis added). Here, the ALJ's decision provides a sufficient explanation as to why limitations in the RFC to "simple routine repetitive tasks in a stable environment with occasional interpersonal interaction" (Tr. 39) sufficiently accounted for Plaintiff's moderate limitation in CPP.

First, the ALJ discussed Plaintiff's testimony regarding her mental symptoms (<u>see</u> Tr. 39-40), but concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible" (Tr. 40). Plaintiff did not directly challenge the ALJ's evaluation of Plaintiff's subjective complaints (<u>see</u> Docket Entry 12) and thus has not established that the ALJ erred in declining to fully credit Plaintiff's subjective complaints. <u>See</u> <u>Squires</u>, 2017 WL 354271, at *5 (holding that an "ALJ labors under no obligation to accept [the p]laintiff's subjective complaints at face value" (internal quotation marks omitted)); <u>see also</u> <u>Zannino</u>, 895 F.2d at 17 ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); <u>Hughes</u>, 2014 WL 906220, at *1 n.1 ("A party should not expect a court to do the work that it elected not to do.").

Second, the ALJ summarized Plaintiff's mental treatment, making the following, pertinent observations:

- Consultative examiner Dr. Cheri R. Anthony noted in October 2011 that Plaintiff "did well on attention, memory, and calculation testing" (Tr. 38; see also Tr. 552);

- Dr. Anthony rated Plaintiff's mental symptoms as "mild" (Tr. 43; see also Tr. 553);

- Dr. Anthony opined that Plaintiff could "learn, retain, and follow instructions consistent with the average employee" and could "perform repetitive tasks" (Tr. 43; see also Tr. 553);

- Treating physician Dr. Chara C. Freeman observed in March 2013 that Plaintiff's "attention span and concentration abilities were normal" (Tr. 43; see also Tr. 611) and "[w]ithin a month, [Plaintiff's] depression was characterized as mild and improving with medications" (Tr. 43; see also Tr. 605); and

- Although Dr. Freeman referred Plaintiff for mental health treatment at Monarch, Plaintiff "was only seen twice at Monarch and otherwise has not engaged in any mental health treatment" (Tr. 43; see also Tr. 603, 696-701)

Notably, Plaintiff did not challenge the ALJ's above-described observations about Plaintiff's mental symptoms. (See Docket Entry 12.)

Third, the ALJ also discussed and weighed the opinion evidence as it related to Plaintiff's ability to function mentally. (See Tr. 44.) Significantly, the ALJ gave "substantial weight" to "Dr. Anthony's consultative opinion . . . that [Plaintiff] remain[ed] capable of simple routine repetitive tasks" (id. (referencing Tr. 553)) and to state agency psychological consultant

17

Dr. Sharon J. Skoll's opinion that, despite moderate deficit in CPP (see Tr. 146), Plaintiff could "maintain attention/concentration to perform [simple, routine, and repetitive tasks]" (Tr. 44 (referencing Tr. 150)).

Under these circumstances, the ALJ adequately explained why a limitation to "simple routine repetitive tasks in a stable environment with occasional interpersonal interaction" (Tr. 39) sufficiently accounted for Plaintiff's moderate limitation in CPP, see Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (unpublished) ("Here, unlike in Mascio, the ALJ discussed substantial record evidence in determining [the claimant's] mental RFC, and his explicit reliance on [the state agency consultant's] opinion adequately explains why [the claimant's] limitations in [CPP] did not translate into any additional restrictions. . . . Therefore, the [c]ourt is not left to guess at the ALJ's decision-making process.").

In Plaintiff's fourth attack on the RFC, she alleges that VE Louise Walker's testimony that no jobs would exist for an individual whose impairments caused "excessive breaks or absences" (Tr. 122) "substantiates that [Plaintiff] is unable to work." (Docket Entry 12 at 12.) Plaintiff's argument lacks merit, as VE Louise Walker testified at Plaintiff's first hearing (see Tr. 89-123), which resulted in an ALJ decision vacated by the Appeals Council (see Tr. 157-67, 173-76). Plaintiff makes no argument

regarding the testimony of VE <u>Lavonne Brent</u>, who testified at Plaintiff's <u>second</u> hearing (<u>see</u> Tr. 54-88), which resulted in the ALJ decision now under judicial review (<u>see</u> Tr. 32-46). (<u>See</u> Docket Entry 12 at 12.)

In short, Plaintiff's first issue on review does not warrant reversal or remand.

## 2. Treating Physician's Opinion

Next, Plaintiff maintains that the ALJ "erred in failing to accord appropriate weight to the opinion evidence in the record." (<u>Id.</u> (capitalization omitted).) In particular, Plaintiff asserts that the ALJ "gave limited weight to [the] opinions [of treating nurse practitioner Amanda Beasley and treating physician Dr. Meryl Snow] because [the ALJ] felt that they overstated [Plaintiff's] limitations, given that she had been able to go on a single car trip and had ridden on a motorcycle." (<u>Id.</u> at 14 (citing Tr. 42-43)). Plaintiff argues that "a single instance of riding in a car and riding on the back (not as the driver) of a motorcycle fails to support [the ALJ's] basis for rejecting these treating source opinions." (<u>Id.</u>) Further, Plaintiff contends that those opinions find support "with similar statements made by [other] treating physicians in the record indicating that [Plaintiff] is severely restricted in her ability to perform work activities." (<u>Id.</u> (citing Tr. 20, 443, 706).) Plaintiff's arguments do not establish reversible error.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), but recognizes that not all treating sources or treating source opinions merit the same deference. For example, the nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence of record. See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). Indeed, the Fourth Circuit has made clear that, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

Dr. Snow and Nurse Beasley (collectively "Dr. Snow") signed a "Medical statement regarding hip problems for Social Security disability claim" on June 4, 2014, indicating that Plaintiff's hip impairment (avascular necrosis) caused severe and chronic pain, stiffness, decreased range of motion, instability, contracture, joint space narrowing, bony destruction, and inability to ambulate

effectively.  (Tr. 695.)  As a result of those symptoms, Dr. Snow opined that Plaintiff could not work for any hours at all, could not sit or stand for any length of time, could not bend, balance, or climb, and could only occasionally stoop.  (Id.)

Dr. Snow also signed a letter dated June 6, 2014, and addressed "To Whom It May Concern," explaining that Plaintiff had suffered from "avascular necrosis of the right femoral head (hip joint)" since 2011, which "is a degenerative condition which results in osteocytic anoxia and thus bone death."  (Tr. 646.)  Dr. Snow indicated that "[t]he associated pain is progressive and debilitating and while unilateral at this time, ultimately over 70% of cases of avascular necrosis will be bilateral."  (Id.)  Dr. Snow opined that, due to that hip condition, Plaintiff could not "sit or stand for more than 10 consecutive minutes," could not "ambulate more than 30 feet without stopping due to pain," and "use[d] a cane to steady herself."  (Id.)  Dr. Snow noted Plaintiff's inability "to secure definitive treatment for [her] condition, a hip replacement, due to her current lack of medical insurance," but opined that Plaintiff's "condition could be effectively addressed with a hip replacement, thus likely returning her to a more favorable position for gaining employment."  (Id.)  Dr. Snow concluded that Plaintiff's "medical condition resulted in the loss of her employment in September 2010 and her inability to engage in

employment since that time," and expressed his "belie[f] that [Plaintiff] [wa]s medically and physically disabled." (Id.)

Here, the ALJ's evaluation of Dr. Snow's opinions comports with the above-cited regulations and Craig. The ALJ evaluated Dr. Snow's opinions as follows:

> Records show [Plaintiff] was approved for Medicaid the following month. It is unclear if the intended audience of [Dr. Snow's] opinions were those reviewing Medicaid appeals. Nevertheless, [Plaintiff] now has the insurance to finance the surgery, and . . . the issue remains her compliance with weight loss and smoking cessation before she has surgery her treating practitioners believe will restore her ability to work. Still, the severity of the limitations set forth in [Dr. Snow's] opinion appear an overstatement and do not correspond with her riding of a motorcycle and a long distance trip and therefore they do not merit great weight. Even [Plaintiff's] hearing testimony revealed greater lifting, sitting, standing, and walking abilities than [Dr. Snow] found.

(Tr. 42-43 (internal citation omitted).) As quoted above, the ALJ gave three proper reasons for his decision to discount Dr. Snow's opinions. (Id.)

First, the ALJ noted that, although Dr. Snow rated Plaintiff's hip impairments as disabling, he also opined that a hip replacement, that Plaintiff could not afford due to lack of health insurance, would likely restore Plaintiff's ability to work. (Tr. 42; see also Tr. 646.) The ALJ then observed that, despite obtaining Medicaid coverage, Plaintiff had not undergone hip replacement surgery because she had neither lost weight nor quit smoking as her surgeons had required her to do preoperatively. (Tr. 43; see also Tr. 704, 706, 738-39). Thus, the ALJ properly

22

recognized that Dr. Snow conditioned his disability opinion on Plaintiff's financial inability to undergo hip replacement surgery, which no longer applied once Plaintiff obtained Medicaid coverage effective November 1, 2013 (see Tr. 59, 443).

Second, the ALJ did not err by finding that Dr. Snow's limitations "do not correspond with [Plaintiff's] riding of a motorcycle and a long distance trip." (Tr. 43.) Plaintiff testified that she rode on the back of a motorcycle for 30 minutes in Maggie Valley, North Carolina, in September 2014 (see Tr. 74-76), and that she only needed to stop twice on the 90-minute trip from Lexington to Charlotte for the hearing on January 9, 2015, i.e., once every 30 minutes (see Tr. 76-77). In contrast to these activities, Dr. Snow opined that Plaintiff could not "sit . . . for more than 10 consecutive minutes" (Tr. 646) and also that she remained unable to engage in any "[s]itting at one time," i.e., not even for 15 minutes (Tr. 695.) Accordingly, the ALJ properly discounted Dr. Snow's opinion as inconsistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); see also Craig, 76 F.3d at 590 (holding that, "if a physician's opinion . . . is inconsistent with other substantial evidence, it should be accorded significantly less weight").

Third, the ALJ also correctly found that Plaintiff's "hearing testimony revealed greater lifting, sitting, standing, and walking

abilities than [Dr. Snow] found." (Tr. 43.) Plaintiff testified that she remained able to lift 5 to 10 pounds, sit for 15 to 30 minutes, stand for 10 to 15 minutes, and walk for about 70 yards. (See Tr. 73, 77.) In direct contrast, Dr. Snow opined in his June 6, 2014 letter that Plaintiff could not "sit or stand for more than 10 consecutive minutes and is unable to ambulate more than 30 feet without stopping due to pain" (Tr. 646), and in his June 4, 2014 medical statement that Plaintiff remained unable to engage in any sitting or standing at one time (Tr. 695). Thus, again, the ALJ appropriately discounted Dr. Snow's opinion as conflicting with other record evidence. See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); see also Craig, 76 F.3d at 590.

In sum, Plaintiff's second assignment of error fails as a matter of law.

### 3. COPD

In Plaintiff's third issue on review, she faults the ALJ for "failing to find that [Plaintiff's] COPD is a severe impairment and further failing to discuss th[at] impairment in the step 2 discussion of severe impairments." (Docket Entry 12 at 15 (capitalization omitted).) According to Plaintiff, "[i]t appears that [the ALJ] is implying that COPD is non-severe due to the fact that [Plaintiff] continues to smoke cigarettes; however, he never specifically discusses whether this impairment is severe and what his reasons are for making that determination." (Id. (citing Tr.

37, 41).)  Plaintiff contends that her "continued treatment and examination findings demonstrate that her COPD is severe and more than a 'slight abnormality' and would have more than a 'minimal' effect on her ability to do basic work activities."  (Id. at 16.) Plaintiff's contentions do not demonstrate an entitlement to reversal or remand.

For purposes of step two, an impairment fails to qualify as "severe" if it constitutes only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities."  Social Security Ruling 96-3p, Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, 1996 WL 374181, at *1 (July 2, 1996) (emphasis added) ("SSR 96-3p").  Applicable regulations further identify "basic work activities" as:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

Plaintiff bears the burden of proving severity at step two. Hunter, 993 F.2d at 35; see also Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." (internal citation omitted)). To carry that burden, Plaintiff "must provide medical evidence showing . . . an impairment(s) and how severe it is . . . ." 20 C.F.R. §§ 404.1512(c), 416.912(c) (emphasis added); see also Social Security Ruling 85-28, Titles II and XVI: Medical Impairments that Are Not Severe, 1985 WL 56856, at *4 (1985) ("SSR 85-28") ("At the second step of [the SEP], . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." (emphasis added)); Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003) ("The step two severity determination is based on medical factors alone . . . ." (emphasis added)).

Here, the ALJ erred by not only failing to find that Plaintiff's COPD qualified as a severe impairment, but by failing to find that condition constituted a medically determinable impairment at all. (See Tr. 37-38.) Plaintiff presented clinical findings such as a decreased breath sounds, shortness of breath on exertion, chronic cough, and rattles, wheezes, and rhonchi in both lungs (see, e.g., Tr. 527, 537, 540, 560, 562, 580, 603, 606, 614, 617, 623, 652, 688, 691), as well as diagnoses of COPD by her treating physicians (see, e.g., Tr. 527, 607, 614), all of which

indicates that Plaintiff suffered from COPD that likely would cause more than a minimal effect on her ability to engage in exertional activity. Given that evidence, the ALJ's failure to identify COPD as a potentially severe impairment constitutes error.

However, any error by the ALJ in failing to list Plaintiff's COPD as a severe impairment amounts to harmless error under the circumstances presented here. Where (as here) an ALJ concludes that a claimant suffers from at least one severe impairment (see Tr. 37 (finding severe Plaintiff's degenerative joint disease, right hip avascular necrosis, obesity, diabetes mellitus, hypertension, right ventricular hypertrophy, incontinence, posttraumatic stress disorder, depression, and anxiety)), any failure to categorize additional impairments as severe generally does not constitute reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished).

Moreover, Plaintiff has not shown how the ALJ's proper categorization of her COPD as a severe impairment at step two would have had any impact on the ALJ's ultimate conclusion that jobs existed in significant numbers in the national economy that Plaintiff could perform. (See Docket Entry 12 at 15-16.) The ALJ discussed Plaintiff's treatment for "bronchitis/[COPD]" in connection with his RFC analysis (Tr. 41), precluded "concentrated exposure to fumes" in the RFC (Tr. 39), and included the fact that Plaintiff suffered from COPD and the preclusion of concentrated exposure to fumes in the dispositive hypothetical question to the VE (see Tr. 83-84), and Plaintiff has not challenged the VE's testimony that jobs existed that accommodated those restrictions (see Tr. 84) or otherwise shown that Plaintiff's COPD further limited her (see Docket Entry 12 at 15-16). That failing precludes relief. See Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005) (ruling remand for express consideration of impairment unnecessary where the plaintiff failed to specify how that impairment would impact ALJ's analysis); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004) (declaring no remand required where the plaintiff failed to show, through objective evidence, "how his [impairment] further impaired his ability to work"); Miller v. Astrue, Civ. No. 2:06-00879, 2008 WL 759083, at *3 (S.D.W. Va. Mar. 19, 2008) (unpublished) (holding that, "where an explicit

discussion of the claimant's [impairment] will not affect the outcome of the case, remand is inappropriate").

Given the foregoing circumstances, the Court should decline to remand based on Plaintiff's third assignment of error. See Morgan v. Barnhart, 142 F. App'x 716, 723 & n.6 (4th Cir. 2005) (applying harmless error standard in Social Security appeal); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.")

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 22, 2017